IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMAH KONAH DORLEY,<br><br>       *Plaintiff*,<br><br>   v.<br><br>JOSEPH A. CARDINALE, *et al*.,<br><br>       *Defendants*. | CIVIL ACTION<br>NO. 14-07005 |

**PAPPERT, J.**                                                                                                     August 10, 2015

<u>**MEMORANDUM**</u>

      Plaintiff Amah Konah Dorley ("Dorley") appeals the decision of the United States Citizenship and Immigration Services ("USCIS") denying his Form I-360 self-petition as the abused spouse of his third wife, a United States citizen. Dorley brings this appeal against Defendants Joseph A. Cardinale ("Cardinale"), Alejandro Mayorkas ("Mayorkas") and Jeh Johnson ("Johnson") (collectively "Defendants") as officers of USCIS or other United States governmental agencies charged with adjudicating applications for immigration benefits.

      Dorley and Defendants have filed cross motions for summary judgment. Dorley argues that Defendants acted unreasonably in denying his self-petition on the basis that Dorley had previously attempted to evade immigration laws and entered into a "sham marriage" with his second wife in violation of Section 204(c) of the Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1154(c). Defendants maintain that USCIS' denial of Dorley's self-petition was "reasonable on multiple fronts" and supported by substantial evidence in the record. For the reasons that follow, the Court will deny Dorley's motion and grant the Defendants'.[1]

---

[1]     In accordance with the Court's April 21, 2015 Scheduling Order (ECF No. 13), the parties filed cross-motions for summary judgment on May 15, 2015. (ECF Nos. 15-16.) Defendants filed a response in opposition to

I.

Dorley is a citizen of Liberia who resides with and supports his biological children and step-children of prior spouses in Coatesville, Pennsylvania. (Compl. ¶ 2.) Dorley has remarried at least two times since moving to the United States. (Admin. R. 2-3.)[2]

Dorley married his first wife, A-B,[3] in Liberia on July 25, 1985. (Admin R. 2.) Dorley entered the United States on February 14, 1989 on a visitor's visa and obtained a Liberian divorce from A-B on May 15, 1989. (*Id.* at 2, 362, 559.) Dorley married his second wife, E-J,[4] in Pennsylvania on November 16, 1989. (*Id.* at 744.) E-J was a United States citizen. (*Id.* at 2, 742.) On December 22, 1989, E-J filed a Form I-130 immigration petition on behalf of Dorley.[5] (*Id.* at 2-3, 742-43.) E-J's petition was denied on November 1, 1994 under Section 204(c) of the Act[6] after an investigation by the Immigration and Naturalization Service ("INS")[7] revealed that

---

Dorley's summary judgment motion on June 1, 2015. (ECF No. 17.) However, Dorley never filed a response to Defendants motion on that date, as provided in the Scheduling Order. Rule 7.1(c) of the Local Rules of Civil Procedure provides that, in the absence of a timely response, the Court may grant motions as uncontested. *See also United States v. Eleven Vehicles, Their Equipment & Accessories,* 200 F.3d 203, 214 (3d Cir. 2000) ("Local court rules play a significant role in the district courts' efforts to manage themselves and their dockets. . . . it is not an abuse of discretion for a district court to impose a harsh result, such as dismissing a motion or an appeal, when a litigant fails to strictly comply with the terms of a local rule.") (citations omitted). The Court will, however, proceed to consider the merits of Dorley's appeal.

[2] In support of their respective motions, both parties cite to the Administrative Record with documents that are Bates labeled "GOVERNMENT000001," "GOVERNMENT000002," etc. through "GOVERNMENT000833." For ease of reference, when citing to the Administrative Record, the Court maintains the numerical assignation of each document but will not include the "GOVERNMENT" prefix. Rather, the Court will cite to "Admin. R. 1" for "GOVERNMENT000001" and so on.

[3] Name withheld in record to protect identity. (*See* Admin. R. 2.)

[4] Name withheld in record to protect identity. (*Id*.)

[5] Obtaining permanent residence based on marriage to an American citizen or legal permanent resident is a multi-step process. First, the citizen or permanent resident spouse must sponsor the alien by filing an I–130 Petition (if granted, it legally classifies the alien as the spouse of the sponsor). Once (or at the same time as) the sponsor files an I–130 Petition, the alien must file an I–485 Application to Register Permanent Residence or Adjust Status. *See Eid v. Thompson*, 740 F.3d 118, 121 (3d Cir. 2014), *cert. denied*, 135 S. Ct. 175 (2014).

[6] Section 204(c), 8 U.S.C. § 1154, provides in pertinent part:

Dorley and E-J had entered into their marriage not in good faith, but "for the purpose of procuring an immigration benefit." (*Id.* at 3, 515-18.)

In the course of their investigation, the INS officers made a number of discoveries that led to their finding that the marriage between Dorley and E-J was a sham. Through a records check with the Department of Welfare, E-J was found to be receiving food stamps, medical assistance, and cash at an address different from her alleged marital address with Dorley. (Admin. R. 517.) When an agent visited this address, a long-term resident of the first floor apartment told the agent that E-J lived upstairs with two men named Roger and Richard. (*Id.*) In addition, "other persons have identified [E-J's] photo as a person they have seen in the neighborhood." (*Id.*)

When the INS officers visited Dorley and E-J's listed marital address, they found another woman living in the apartment with Dorley. (Admin. R. 516.) This woman claimed to be Dorley and E-J's roommate, but stored her clothes in Dorley's bedroom. (*Id.*) The INS officers found a "crib sheet" in the bathroom which appeared to list E-J's personal information, including her astrological sign, height, weight, clothing and shoe sizes, and food likes and dislikes. (*Id.* at 516, 520.) The INS' denial decision explained that these "kind[s] of 'crib sheets' are often used by

---

> [P]rohibition against approval in cases of marriages entered into in order to evade immigration laws; restriction on future entry of aliens involved with marriage fraud[:]
>
> Notwithstanding the provisions of subsection (b) of this section no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

[7] The Immigration and Naturalization Service ("INS") was the predecessor agency to USCIS. (*See* Admin. R. 3); *see also Gulen v. Chertoff*, No. 07-cv-2148, 2008 WL 2779001, at *2 n.3 (E.D. Pa. July 16, 2008).

persons involved in sham marriages to guide the participants through their marriage fraud interviews." (*Id*. at 516.)  The INS officers also found little to no mail for E-J at the alleged marital address.  (*Id*.)

The INS officers interviewed the owner of Dorley's apartment complex.  (Admin. R. 516.)  Despite a stated familiarity with all tenants due to the relatively small size of the complex, the owner did not recognize a photo of E-J.  (*Id*.)  In contrast, she did recognize a photo of Dorley and stated that she knew another African female resided in the apartment with him.  (*Id*.)  Neither did Dorley's neighbor across the hall recognize a photo of E-J, but "refused to comment further indicating that she did not want to get [Dorley] into trouble."  (*Id*. at 516-17.)  Dorley appealed the INS' denial of E-J's Form I-130 to the Board of Immigration Appeals ("BIA").  (*Id*. at 3, 499-500.)  The appeal was denied because Dorley, as the beneficiary and not the filer of the I-130, had no standing to appeal.  (*Id*.)

Dorley divorced E-J nearly five years later on May 24, 1999.  (Admin. R. 3, 479.)  On July 29, 2000, Dorley married his third wife and alleged abusive spouse, T-S,[8] in Pennsylvania.  (*Id*. at 3, 478.)  T-S, a United States citizen, filed an I-130 immigrant petition on Dorley's behalf on May 26, 2004.  (*Id*. at 3, 382-83.)  This petition was approved on August 5, 2004, after which Dorley filed an I-485 application for permanent resident status on November 16, 2004.  (*Id*. at 3, 393-96.**)**  On September 24, 2008, USCIS denied Dorley's I-485 application and revoked T-S' mistakenly approved I-130 petition pursuant to Section 204(c) of the Act based on Dorley's sham marriage to E-J.  (*Id*. at 3, 382-83.)

Dorley later filed a Form I-360 self-petition seeking to classify himself as the abused spouse of T-S on December 22, 2010.  (Admin. R. 3, 266-77.)  The affidavit submitted in support of Dorley's I-360 self-petition describes his tumultuous marriage with T-S, but does not discuss

---

[8]     Name withheld in record to protect identity. (Admin. R. 3.)

the bona fides of his second marriage to E-J.  (*Id*. at 121-25 (proffering with regards to second marriage only that:  "In December 1989, I married [E-J], a U.S. citizen.  We filed immigration papers together but she developed a drug problem and the marriage failed.").)  On September 13, 2011, USCIS sent Dorley a Request for Evidence, stating that the "evidence submitted with your form is insufficient" and asking for, *inter alia*, "clear and convincing evidence" to establish that Dorley's marriage with E-J was not a sham.  (*Id*. at 200-05.)  Dorley responded in December 2011 with additional evidence, including a Pennsylvania state police report showing Dorley to have no prior criminal record, letters and affidavits from various people attesting to Dorley's good character and confirming T-S' abuse of him, and several pictures depicting Dorley and E-J together.  (*Id*. at 206-17.)  On January 10, 2013, USCIS denied Dorley's I-360 self-petition, finding the evidence insufficient to establish that Section 204(c)'s bar did not apply.  (*Id*. at 73-75.)

      Dorley appealed USCIS' decision on his I-360 and provided additional evidence on three different occasions in an effort to show the bona fides of his second marriage to E-J.  (Admin. R. 69-72.)  On July 15, 2013, Dorley submitted various documents, including:  (1) a March 14, 1994 letter from Dorley's former attorney asking Dorley to obtain letters to aid in the processing of E-J's I-130, including a letter from the welfare office "stating that [E-J] is no longer receiving public assistance" and a letter from E-J's counselor "starting that she has concluded the drug and alcohol program"; (2) Dorley and E-J's 1993 joint tax return; (3) E-J's 1994 W-2 Wage and Tax Statement reflecting her address as the marital address; (4) E-J's bank card from the 1993-1994 time period; (5) applications for Dorley and E-J's two children to attend the Milton Hershey School listing Dorley and E-J as parents and the marital address as their home address; and (6) a

5

series of photographs depicting Dorley with co-workers and friends, as well as two pictures of E-J sitting on a sofa allegedly in their martial home. (*Id*. at 35-66.)

On August 24, 2013, Dorley submitted an additional affidavit which attempted to explain the problematic evidence found by the INS, including the crib sheet. (Admin. R. 27-32.) This affidavit states that Dorley did not know E-J was committing welfare fraud "at that other address" and that he thought E-J "went to that address when she was using illegal drugs." (*Id*. at 28.) Dorley avers that INS interviewed him and E-J four times, kept them under surveillance, and "found [them] together on numerous occasions so I do not understand what their problem is now." (*Id*. at 29-31.) The affidavit accuses INS officers of using threats and bribery to get E-J to admit that her marriage with Dorley was not real. (*Id*.) Dorley swears that he was present when the INS spoke to the manager of his apartment complex, who confirmed that E-J did in fact live there. (*Id*. at 28-29.) Dorley also attests that the INS later called the manager on the phone and "threatened her saying that [E-J] did not live there and she was committing perjury," despite the manager's repeated confirmation that E-J lived at the marital address. (*Id*.) Finally, the affidavit explains that the crib sheet was merely "a piece of paper with [E-J's] measurements on it for making a dress" and that Dorley and E-J's roommate informed the INS officer of this when the crib sheet was found. (*Id*. at 28.)

On May 25, 2014, Dorley sent USCIS his last pieces of evidence, consisting of a 1989 joint lease agreement signed by Dorley and E-J, and Dorley's tax statements for 1990-1993. (Admin. R. 13-26.)

On November 10, 2014, the Administrative Appeals Office ("AAO") reviewed Dorley's appeal *de novo* and dismissed it, finding that Section 204(c) barred approval of Dorley's Form I-360 self-petition because he had not met his burden to show the bona fides of his marriage with

E-J. (Admin R. 1-7.) Dorley subsequently brought this action for the Court to review the AAO's decision and compel the Defendants to adjudicate his self-petition "in conformity with Due Process and applicable law." (Compl. ¶ 9, ECF No. 1.)

## II.

The parties' motions for summary judgment ask the Court to determine whether USCIS lawfully denied Dorley's I-360 self-petition. According to Federal Rule of Civil Procedure 56(a), summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Unlike the typical summary judgment action, the parties seek judicial review under the Administrative Procedure Act ("APA"). (Pl.'s Mot. Summ. J. 1, ECF No. 16; Defs.' Mot. Summ. J. 1, ECF No. 15.) While summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency's action is supported by the administrative record and consistent with the APA standard of review, because the district judge sits as an appellate tribunal in such cases, the usual summary judgment standard does not apply. *See Uddin v. Mayorkas,* 862 F. Supp. 2d 391, 399 (E.D. Pa. 2012).

Under the APA, a district court may only hold unlawful and set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The standard for determining whether an agency's actions were arbitrary and capricious is the same as the standard for determining whether the agency abused its discretion. *See Mirjan v. Attorney Gen. of U.S.*, 494 F. App'x 248, 250 (3d Cir. 2012) (citing *Donovan v. Adams Steel Erection, Inc.,* 766 F.2d 804, 807 (3d Cir. 1985)). "In applying that standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S.

138, 142 (1973). The scope of review under this standard is narrow and is designed as such in order to avoid substituting a court's judgment for that of the agency. *Judulang v. Holder*, 132 S. Ct. 476, 483 (2011); *accord Guzman v. Attorney Gen. of U.S.*, 770 F.3d 1077, 1087 (3d Cir. 2014). An agency's decision is in accordance with the law when it "articulate[s] a satisfactory explanation for its action[,] including a 'rational connection between the facts found and the choice made.'" *CBS Corp. v. Fed. Commc'ns Comm'n,* 663 F.3d 122, 137 (3d Cir. 2011) (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)).

On the other hand, an agency's findings are arbitrary and capricious where "'the evidence not only supports a contrary conclusion but compels it.'" *Yitang Sheng v. Attorney Gen. of U.S.,* 365 F. App'x. 408, 410 (3d Cir. 2010) (quoting *Abdille v. Ashcroft,* 242 F.3d 477, 483-84 (3d Cir. 2001). "Reversal is appropriate only where the administrative action is irrational or not based on relevant factors." *NVE, Inc. v. Dep't of Health & Human Servs.,* 436 F.3d 182, 190 (3d Cir. 2006) (citing *Motor Vehicle Mfrs.,* 463 U.S. at 43). In determining whether an agency acted arbitrarily and capriciously, a district court examines "whether the agency relied on factors outside those Congress intended for consideration, completely failed to consider an important aspect of the problem, or provided an explanation that is contrary to, or implausible in light of, the evidence." *Id.* Additionally, a reviewing court must look at the reasons articulated by the agency itself at the time of the decision rather than post-hoc rationalizations. *Motor Vehicle Mfrs.,* 463 U.S. at 50.

Dorley bears the burden of proof to establish his eligibility as an abused spouse under the Act. *See* 8 U.S.C. § 1361. Dorley further bears the burden to establish that Section 204(c)'s bar does not apply—*i.e.*, that his second marriage to E-J was not "entered into for the purpose of

evading immigration laws." *See id*.; *see also Iredia v. Fitzgerald,* No. 10-cv-228, 2010 WL 2994215, at *4 (E.D. Pa. July 27, 2010) ("In immigration petition proceedings, the applicant has the burden of establishing eligibility, including the absence of prior marriage fraud."). The Court will consider Dorley's APA and due process arguments in turn.[9]

### III.

USCIS's decision to deny Dorley's Form I-360 self-petition was not arbitrary, capricious, or an abuse of discretion. To the contrary, the agency's action was reasonable and supported by substantial evidence[10] as articulated in the AAO's lengthy and detailed decision explaining why Dorley's Form I-360 self-petition was denied.

Dorley principally argues that the denial of his petition "is founded upon a one-sided consideration of the record evidence, ignoring evidence beneficial to Mr. Dorley." (Pl.'s Mot. Summ. J. 4.) This argument is belied by a careful reading of the AAO's decision. In issuing its decision, the AAO made clear that it examined all the evidence—both new and old, both supporting and contrary to the bona fides of Dorley's marriage with E-J. (Admin R. at 3-4.) Considering all of this evidence, the AAO dismissed Dorley's appeal and let USCIS' denial of his I-360 self-petition stand. (*Id*. at 7.) The AAO held that Section 204(c) barred approval of Dorley's self-petition because he had not met his burden to show the bona fides of his marriage with E-J. (*Id*.)

---

[9] The Court has jurisdiction to review whether the denial of Dorley's Form I-360 self-petition violates the APA under 28 U.S.C. § 1331. *See Eid*, 740 F.3d at 122; *Iredia v. Fitzgerald,* No. 10-cv-228, 2010 WL 2994215, at *4 (E.D. Pa. July 27, 2010).

[10] The INS' original 1994 decision to deny E-J's Form I-130 immigration petition on the grounds of marriage fraud must have been supported by "substantial evidence" that E-J and Dorley married for the purpose of evading the immigration laws. In this context, substantial evidence means evidence a reasonable mind would find adequate to support the agency's conclusion of marriage fraud. *See Smith v. Holder,* 487 F. App'x 731, 733 (3d Cir. 2012); *Herrera v. Holder*, No. 13-cv-640, 2013 WL 6022243, at *3 (D.N.J. Nov. 12, 2013).

The AAO began reviewing the same troubling evidence supporting E-J and Dorley's marriage fraud that the INS noted back in 1994—the crib sheet found at the marital address, another woman living with Dorley at the martial address and keeping her things in his bedroom, E-J's registration of a second address for welfare benefits, a neighbor's confirmation at the second address that E-J lived there with two other men, statements from the complex manager and neighbor at the martial address that they did not recognize E-J, but that Dorley was living there with another woman, and a lack of substantial correspondence directed towards E-J at the marital address. (Admin. R. 3-5.) The AAO considered the documents submitted with E-J's I-130 and found that they "provided some evidence of intermingled finances, [but] the bank statements did not show that both spouses made deposits and withdrawals over the course of their marriage and the IRS documents were not certified." (*Id*. at 5.) The AAO also acknowledged the photographs of E-J and Dorley together. (*Id*.) However, the AAO found that, without more, these photographs alone were "insufficient to establish the bonafides of [Dorley's] marriage or that he married [E-J] in good faith," particularly in light of problematic evidence gathered by the INS. (*Id*. at 6.)

The AAO then addressed Dorley's affidavits where he attempted to explain away much of this problematic evidence. The AAO noted that despite Dorley's claims that the apartment complex manager and neighbor failed to identify E-J because they had their "own problems" and "did not want to put anyone in trouble," Dorley could not explain the absence of affidavits from these individuals. (Admin. R. 5.) Likewise, there were no affidavits from the manager or E-J attesting to the alleged threats and bribes INS officers made to them; these allegations came from Dorley alone.[11] (*Id*. at 6.) Whether or not the other woman living with Dorley was Dorley's

---

[11] The AAO also noted that it was not until the submission of Dorley's third August 24, 2013 affidavit that he claimed he was present when the INS officer questioned the apartment complex manager and that, contrary to the

sister-in-law, as he steadfastly maintained, was irrelevant because the key issue was his lack of a shared and bona fide residence with E-J, not his relationship with the other woman. (*Id*. at 5-6.) And if the crib sheet were nothing more than a note of E-J's measurements so Dorley's sister could make her a dress, this did not explain why the crib sheet also included information like E-J's astrological sign, shoe size, and food likes and dislikes. (*Id*. at 6.)

Finally, the AAO reviewed all aspects of Dorley's newly submitted evidence allegedly in support of his bona fide marriage with E-J and found issues with each, preventing the AAO from ascribing them too much weight. (Admin. R. 5-7.) Specifically, the tax statements for 1990-1993 listed only Dorley's social security numbers, not E-J's. (*Id*. at 7.) The Milton Hershey School applications were unsigned. (*Id*.) The letter from Dorley's former attorney was addressed only to Dorley, despite its subject concerning the INS' investigation of his and E-J's marriage. (*Id*.) The joint residential lease appeared to have been altered where Dorley and E-J's names appeared. (*Id*.) And of the newly submitted seven photographs, not one showed Dorley and E-J together. (*Id*.)

The AAO considered the five character affidavits submitted by Dorley's friends. (Admin. R. 6.) However, only two of these affidavits arguably referenced E-J: one stated that Dorley once introduced his friend to E-J at the marital address, and another stated that the friend lived with Dorley "and his family" at the marital address. (*Id*.) None of these affidavits discussed Dorley's relationship with E-J or whether he and E-J married in good faith. (*Id*.)

Reviewing all of the above, the Court finds that the AAO did not act arbitrarily or capriciously or abuse its discretion in dismissing Dorley's appeal of USCIS' denial of his I-360 self-petition. The AAO's decision was firmly based upon all the available evidence and is a

---

facts as presented in the INS' written decision, the manager identified E-J from a photograph and stated that E-J and Dorley lived together. (Admin. R. 6.)

reasonable interpretation of it. There is ample evidence in the record that Dorley's marriage with E-J was fraudulent (the crib sheet, statements of their neighbors and complex manager, E-J's clandestine second address, lack of affidavits of family and friends attesting that they entered their marriage in good faith, etc.) and, thus, there is a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs.*, 463 U.S. at 43. Furthermore, it is plain from the administrative record that the AAO duly considered Dorley's newly submitted evidence and found it insufficient to carry his burden to overturn the agency's earlier finding that his marriage with E-J was a sham. Examining the AAO's decision and the corresponding evidence, it is clear that the AAO's decision is principled, grounded in a thorough investigation of all of the information provided, and offers a more than sufficient, rational explanation for its determination. This is the hallmark of reasonable agency action. *See, e.g., Mirjan*, 494 F. App'x at 252 ("Because there is evidence in the record to support the agency's determination and because we do not supplant the agency's judgment with our own, we reject Mirjan's arbitrary and capricious argument."); *Iredia*, 2010 WL 2994215 at *5 ("The plaintiffs question the agency's decision for not relying on the evidence they submitted, but the agency simply chose to believe the ex-wife, who had no demonstrated reason to lie, over the plaintiffs. The conclusion that the plaintiffs failed to meet the burden to prove the validity of the marriage was reasonable. The USCIS provided full decisions explaining the evidence against the plaintiffs, and their reasons for discounting the evidence presented.").

      Dorley makes a second argument in his motion for summary judgment—he contends that the administrative record demonstrates a clear bias because it is missing information that would support his case. (Pl.'s Mot. Summ. J. 8.) Dorley points to two relevant missing pieces:

(1) notes or videos from the interviews Dorley and E-J had with INS; and (2) a letter from the complex manager delivered to USCIS on October 26, 1993. (Pl.'s Mot. Summ J. 8.)

Regarding the interview notes or videos, while their absence is inconvenient, it is by no means probative to the extent that it renders the AAO's decision arbitrary and capricious. *See Herrera v. Holder*, No. 13-cv-640, 2013 WL 6022243, at *5 (D.N.J. Nov. 12, 2013) ("Plaintiffs' position that the Investigative Report lacks credibility because it does not include Herrera's written confession is without merit. Although the signed confession is apparently missing, when the totality of the evidence is considered . . . this Court does not find that the BIA abused its discretion in determining that the Investigative Report was credible and persuasive."). Furthermore, Dorley contends that the record is biased because it contains no interview notes or videos, but also maintains that the lack of negative interview notes in the record supports that his marriage with E-J was bona fide. (Pl.'s Mot. Summ. J. 5, 7, 10.) This argument is disingenuous and the Court gives it little, if any, weight.

Regarding the letter from Dorley's complex manager, the Court notes that the administrative record does contain a reference to this letter. (*See* Admin. R. 724 (noting in an April 5, 1994 letter from Dorley's former counsel to INS that: "At the interview on October 26, 1993, the Dorley[s] hand delivered to Officer Essex a letter from [the complex manager] stating unequivocally that she recognized [E-J] and that [E-J] was residing at the apartment with Mr. Dorley.").) The Court does not find the manager's letter anywhere in the record, but again, Dorley has failed to produce an affidavit from the manager in which she could have attested not only to the alleged threats she received from INS officers, but also the contents of her letter. Given that Dorley carries the burden of proof upon appeal, 8 U.S.C. § 1361; *Iredia,* 2010 WL 2994215 at *4, the Court finds this argument inadequate to compel a different result. In light of

all the other evidence in the record and the reasoned, thorough decision of the AAO, the Court finds the denial of Dorley's self-petition to be rational and based on relevant factors. The Court will not substitute its judgment for that of the agency. Summary judgment on the APA claim is denied to Dorley and granted to Defendants.

## IV.

Dorley's complaint also asks that the Court compel USCIS to adjudicate his self-petition "in conformity with Due Process." (Compl. ¶ 9.) Dorley does not address whether his claim of due process is substantive or procedural. (*See id*. ¶¶ 9-10; Pl.'s Mot. Summ. J. 9-10.) As such, the Court will address both.

For a plaintiff to state a claim for denial of substantive due process, "a plaintiff must allege that he was denied a protected interest by arbitrary or capricious government action." *Iredia,* 2010 WL 2994215 at *5 (citing *Sameric Corp. of Del. v. City of Philadelphia,* 142 F.3d 582, 590 (3d Cir. 1998)). An alien does not have a "liberty interest" in the "favorable adjudication of an immigration petition." *Id.* at *5. Thus, because Dorley cannot claim a constitutional right to have his I-360 self-petition granted, the Court dismisses his substantive due process claim.

Likewise, procedural due process violations require courts to determine "(1) whether the individual had a protected interest making available the due process protections, and if so, (2) whether the individual was afforded appropriate process." *Iredia,* 2010 WL 2994215 at *5 (citing *Shoats v. Horn,* 213 F.3d 140 (3d Cir. 2000)). The due process rights to which aliens are entitled stem from statutory rights granted by Congress. *Id.* (citing *Dia v. Ashcroft,* 353 F.3d 228 (3d Cir. 2003) (en banc)). Aliens do not, however, have a statutorily-protected interest in the approval of an immigration petition left to the discretion of the USCIS. *Id.* (citation omitted).

Dorley does have a statutory right to have his self-petition reviewed and decided in accordance with the APA.  Here, obviously, the Court has already determined that the AAO's decision was proper under the APA.  *See* Part III, *supra*; *see also Herrera*, 2013 WL 6022243 at *5 n.1 ("Because Plaintiffs' APA claim fails, their Fifth Amendment due process claim must also fail.").  Therefore, Dorley's procedural due process claim is also dismissed.

V.

Accordingly, Defendants' motion for summary judgment is granted and Dorley's motion for summary judgment is denied.  An appropriate order follows.


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.